IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 17-cv-2034-WJM-KLM

PRAETORIAN INSURANCE COMPANY,

    Plaintiff,

v.

AXIA CONTRACTING, LLC, and
255 BLACKHAWK HOSPITALITY, LLP,

    Defendants.

## ORDER GRANTING SUMMARY JUDGMENT

Plaintiff Praetorian Insurance Company ("Praetorian") brought this lawsuit seeking a declaratory judgment that it has no obligation to pay insurance benefits under a builder's risk policy (the "Policy") issued to Defendants Axia Contracting LLC ("Axia") and 255 Blackhawk Hospitality LLP ("Blackhawk") (together, "Defendants").

On summary judgment, the parties seek clarity from this Court on whether, under the Policy, Defendants' failure to maintain a protective device, a six-foot fence enclosing the entire job site, which was listed in an endorsement and schedule attached to the contract, relieves Praetorian of its obligation to pay for Defendants' losses due to fire. (ECF No. 50.) Plaintiff also seeks summary judgment on Defendants' counterclaims. For the reasons discussed below, the Court will grant Praetorian's Motion for Summary Judgment ("the Motion"), direct entry of judgment, and terminate this case.

# I. BACKGROUND

## A. Factual Background

The facts are fairly straightforward and undisputed. Citations to docketed materials are to the page number in the CM/ECF header rather than to any internal pagination.

On June 19, 2017, Defendants were in the process of constructing a hotel (the "Project") at 255 Blackhawk Street, Aurora, Colorado (the "Property"). Blackhawk owned the Property and Axia was the general contractor for the Project. Early in the morning on June 19, 2017, a fire occurred at the Property damaging the unfinished hotel structure.

The City of Aurora Fire Department investigated the fire and a fire investigator concluded that it was "<u>the result of an intentional and direct human act</u>" and classified the fire as "incendiary . . . that is deliberately set with the <u>intent</u> to cause the fire." (ECF No. 50-1 at 10 (emphasis in original).) Based on information provided by Axia, the City of Aurora Fire Department estimated the property and structural damage to be approximately $3,000,000.

At the time of the fire, Praetorian had issued to Defendants the Policy covering "perils during the course of construction, subject to the terms and conditions of the Policy," including the terms of the Builders' Risk Coverage as well as any endorsements and schedules identified on the schedule of coverages. (ECF No. 50 at 3–4, ¶¶ 7–8; *see* ECF No. 50-2.) Under the Policy, Praetorian is responsible for "risks of direct physical loss or damage unless the loss is limited or caused by a peril that is excluded."

(ECF No. 50-2 at 20.)

The Policy includes a "Protective Devices Schedule" and a "Protective Devices Endorsement" ("PDE"). (ECF No. 50-2 at 50–51.) The Protective Devices Schedule lists the following protective devices or services (together, "Protective Safeguards"):

> Site will be protected with chain link fencing, or other similar security fencing, at least 6 ft. in height completely enclosing the jobsite.
>
> All entrance and access gates shall remain securely locked during non-working hours.
>
> Jobsite will be fully illuminated each night with lights continuously from sunset to sunrise.

(*Id.* at 50.) The PDE added both "other conditions" and "perils excluded." Under "other conditions," the PDE stated:

> **Protective Devices** – "You" are required to maintain, at all times during the policy period, the protective devices and services described on the Protective Devices Schedule.

(ECF No. 50-2 at 51.) Under "perils excluded," the PDE added the following language:

> The following exclusion is added . . . under Perils Excluded [of the Builders' Risk Coverage] and applies only when a device or service, shown on the Protective Devices Schedule, provides fire protection:
>
> "We" do not pay for loss caused by fire if, prior to the fire, "you":
>
> a. had knowledge of any suspension or impairment in the protective device or service described on the Protective Devices Schedule and did not notify "us"; or
> b. failed to maintain in complete working order, the fire protective device or service described on the Protective Devices Schedule which "you" control.

(*Id.*) The PDE similarly excluded losses caused by theft in the absence of a Protective

3

Safeguard that provides theft protection.  (*Id.*)

The parties agree that, at the time of the fire, the Project jobsite was "not enclosed with chain link fencing at least 6 feet in height, and because the jobsite was not completely enclosed in such fencing, all entrance and access gates were not securely locked."  (ECF No. 50 at 5, ¶ 12; ECF No. 53 at 8, ¶ 12.)  Praetorian contends, and Defendants admit for purposes of the Motion, that Defendants received a 10% credit due to the inclusion of the PDE and Protective Devices Schedule, thereby reducing the premium for the Policy by 10%.  (ECF No. 50 at 5, ¶ 11; ECF No. 53 at 8, ¶ 11.)

Defendants sought coverage from Prateorian for damages caused by the fire.  On August 23, 2017, Praetorian denied coverage for failure to comply with the Policy.

**B.    Procedural History**

The same day that Praetorian denied coverage for losses from the fire, it filed the instant action seeking a declaratory judgment that it was not required to pay for losses at Defendants' jobsite.  (ECF No. 1 at 4–6, ¶¶ 19–28.)  In response, Defendants filed counterclaims seeking a declaratory judgment that Praetorian owed Defendants under the Policy, and alleging breach of an insurance contract, as well as statutory and common law bad faith breach of insurance contract.  (ECF No. 23 at 19–22, ¶¶ 58–78.)

At a scheduling conference before U.S. Magistrate Judge Kristen L. Mix, the parties requested that discovery be conducted in two phases: an initial period focused on insurance coverage issues and a second period, if necessary, on Defendants' counterclaims.  (ECF Nos. 41 & 42.)  Judge Mix granted the request.  (ECF No. 41.)

The Phase I summary judgment briefing addressed two related questions:

(1) Did the PDE add as a condition precedent to coverage a requirement that Defendants must maintain the Protective Safeguards?; and (2) Is the six-foot fence, one of the Protective Safeguards, a device or service that "provides fire protection"? (ECF No. 50 at 7–11; ECF No. 53 at 14–40.) The Court sought supplemental briefing from the parties addressing "the materiality of the requirement to maintain the protective devices and services described on the Protective Devices Schedule." (ECF No. 62.) Specifically, the Court asked the parties to address "the question of whether Defendants' failure to erect and maintain a chain link or similar security fencing at least six feet high completely enclosing the entire jobsite constitutes a material breach of the insurance contract." (*Id.*) The parties simultaneously submitted their supplemental briefs on February 22, 2019.

## II. LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986). A fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001). An issue is "genuine" if the evidence is such that it might lead a reasonable trier of fact to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997). Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or, conversely, is so

one-sided that one party must prevail as a matter of law. *Anderson*, 477 U.S. at 248-49; *Carey v. U.S. Postal Serv.*, 812 F.2d 621, 623 (10th Cir. 1987).

In analyzing a motion for summary judgment, a court must view the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). In addition, the Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial. *See Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

### III. ANALYSIS

The Court has diversity jurisdiction over this lawsuit (*see* ECF No. 1 ¶¶ 1–4), and thus applies Colorado law.[1]

### A. The Policy is Not Ambiguous

The present dispute is, at heart, one of contract interpretation. Under Colorado law, courts construe insurance policies using general principles of contract interpretation.[2] *Greystone Const., Inc. v. Nat. Fire & Marine Ins. Co.*, 661 F.3d 1272,

---

[1] The parties appear to assume that Colorado law applies. (*See, e.g.*, ECF No. 50 at 7; ECF No. 53 at 8–13.) The Court agrees and will apply Colorado law. *Grynberg v. Total S.A.*, 538 F.3d 1336, 1346 (10th Cir. 2008) ("Because the parties' arguments assume that Colorado law applies, we will proceed under the same assumption.").

[2] While Defendants accurately contend that insurance contracts "differ from ordinary, bilateral contracts," emphasizing the general disparity in bargaining power and knowledge between the insurer and policyholder (*see* ECF No. 53 at 8–10), Defendants have not pointed to any case which states that this difference allows courts do interpret insurance contracts using anything besides the general principles of contract interpretation. Moreover, it is not clear that Defendants' cited cases about the disparity in bargaining power and knowledge of the parties, fully apply here because, unlike automobile insurance policies, there is evidence in the record that the parties fully negotiated the Policy. *See Hoang v. Assurance Co. of Am.*, 149 P.3d 798,

6

1283 (10th Cir. 2011). Where the contract language is clear and unambiguous, policy provisions should be enforced as written, and in accordance with the plain meaning of the words used. *Greystone*, 661 F.3d at 1283; *Gustafson v. Am. Fam. Mut. Ins. Co.*, 901 F. Supp. 2d 1289, 1299 (D. Colo. 2012). However, where a term in an insurance policy is ambiguous—or susceptible to more than one reasonable interpretation—the court must ascertain and give effect to the reasonable expectations of the parties. *Gustafson*, 901 F. Supp. 2d at 1299. "When construing the language of an insurance contract, its provisions cannot be read in isolation, but must be considered as a whole." *Simon v. Shelter Gen. Ins. Co.*, 842 P.2d 236, 239 (Colo. 1992). Conflicting provisions are construed against the insurer and in favor of coverage to the insured. *Simon*, 842 P.2d at 239.

Typically, a commercial liability policy "broadly defines the damages to which it applies and then specifically lists exclusions to the broad grant of coverage." *Hoang v. Assurance Co. of Am.*, 149 P.3d 798, 802 (Colo. 2007). "Exclusionary clauses designed to insulate particular conduct from general liability coverage provisions must be drafted in clear and specific language." *Am. Fam. Mut. Ins. Co. v. Johnson*, 816 P.2d 952, 953 (Colo. 1991). The insurer must show that the exclusion is not subject to any other reasonable interpretation. *Id.* The insured has the burden to prove that a claim comes within the coverage of a policy, and the insurer has to burden to prove that the facts fall within a policy's exclusions. *Rivelli v. Twin City Fire. Ins. Co.*, 359 F. App'x

---

802 (Colo. 2007) ("When the insurance policy was offered on a take it or leave it basis, rather than being fully negotiated by the parties, we have a heightened responsibility in reviewing its terms. *Thompson v. Md. Cas. Co.*, 84 P.3d 496, 502 (Colo. 2004). In such circumstances we construe an ambiguity in favor of coverage.").

7

1, 4 (10th Cir. 2009).

Here, the Court finds that the Policy is not ambiguous. The PDE plainly requires that Defendants maintain, among other Protective Safeguards, a fence around the Property. (ECF No. 50-2 at 50–51.) The parties added this obligation to a list of "other conditions," which included notice requirements, exclusions for willful concealment or misrepresentation, and appraisal and subrogation terms. (*Id.* at 26–27.) The PDE also separately listed two additional exclusions pertaining to fire protection and theft protection. (*Id.* at 51.) Because the contract is not ambiguous, the Court must determine the import of Defendants' failure to comply with an unambiguous contract term.

**B.    Material Breach**

A material breach "goes to the root of the matter or essence of the contract . . . and renders substantial performance under the contract impossible." *Interbank Investments, L.L.C. v. Vail Valley Consol. Water Dist.*, 12 P.3d 1224, 1229 (Colo. App. 2000) (internal quotation omitted). Materiality is assessed "in the context of the expectations of the parties at the time the contract was formed" and takes into account "the importance or seriousness of the breach and the likelihood that the injured party will nonetheless receive substantial performance." *Coors v. Sec. Life of Denver Ins. Co.*, 112 P.3d 59, 64 (Colo. 2005). Material breach of a contract by a party deprives that party of the right to demand performance under the contract. *Id.*

Whether a breach is material is generally a question of fact. *Steak n Shake Enter., Inc. v. Globex Co., LLC*, 110 F. Supp. 3d 1057, 1074–75 (D. Colo. 2015).

8

However, "where reasonable minds could not differ on an issue, the question become one of law for the court." *Id.* at 1075 (citing cases).

On this record, the Court concludes that there is no genuine dispute of material fact that the requirement to maintain a security fence was a material term of the insurance contract. Defendants' failure to adhere to the Policy terms as written deprived Praetorian of the central benefit of its bargain with Defendants: Praetorian agreed to assume a known level of risk of liability for losses not otherwise excluded and issued the Policy in exchange for Defendants' payment of insurance premiums. And as even the Defendants admit for the purposes of this Motion, Praetorian reduced the premium for the Policy by 10%, due to the inclusion of the PDE and Protective Devices Schedule. (ECF No. 50 at 5, ¶ 11; ECF No. 53 at 8, ¶ 11.)

In terms of the materiality of certain terms of the Policy, the Court finds that this premium reduction was the result of a specific *quid pro quo* bargain: Plaintiff agreed to the premium reduction in exchange for Defendants' agreement to include in the Policy specific provisions which required them to supply the Protective Safeguards at the Property. According to the sworn and uncontroverted representation to the Court of Barry Walter, a Program Manager for QBE Americas, Inc. ("QBE"), responsible for the Safehold Builders' Risk Programs written through QBE's affiliates including Praetorian, the "quoted premium factored in a discount of approximately 10% based on the inclusion of these protective safeguards," namely: (a) installing a security fence enclosing the entire construction site; (b) locking access gates during non-work hours; and (c) fully illuminating the job site from sunset to sunrise. (ECF No. 64-1 at 3.) Thus, at the time the parties signed the Policy, Praetorian accepted a certain level of risk, and

9

charged Defendants lower premiums, on the explicit premise that Defendants would maintain the Protective Safeguards.

As a result of Defendants' failure to provide one of these Protective Safeguards—a security fence around the Property—Praetorian was effectively required, without its knowledge or consent, to assume a greater level of risk than that for which it had expressly bargained. On these facts, the Court finds that reasonable minds can only conclude that the requirement of a security fence around the Property was a material term of the Policy. See Steak n Shake, 110 F. Supp. 3d at 1075.

Defendants contend that construing the requirement to erect and maintain a fence under the PDE as a material term of the Policy renders the fire and theft exclusions in the PDE meaningless. (ECF No. 63 at 2–3.) See Martinez v. Am. Fam. Mut. Ins. Co., 413 P3d 201, 203 (Colo. App. 2017). This is not so. For example, the PDE requires Defendants to "maintain" the Protective Safeguards. Assume that Defendants had "maintained" the fence, but failed to "maintain [it] in complete working order," e.g., erected the fence and, when the need arose, repaired some but not all holes in the fence. In that hypothetical circumstance, Defendants would have complied with the material term of the Policy (by erecting a security fence around the Property), but the theft exclusion—which like the fire exclusion requires that Defendants maintain the fence in "complete working order"—would prevent Defendants from recovering for a particular loss under the Policy.[3]

---

[3] For purposes of this analogy, the Court simply assumes that a fence is a theft protective device. The Court does not decide and expresses no opinion on whether the fence is a fire protective device under the Policy.

The Court's reading of the contract also preserves the intent of the parties, giving effect to the plain language, and gives effect to all provisions such that none are rendered meaningless. *See Copper Mountain, Inc. v. Indus. Sys., Inc.*, 208 P.3d 692, 697 (Colo. 2009). Moreover, it gives full effect to the specific, negotiated-for provisions listed in the Protective Devices Schedule and to the two parts of the PDE: the requirement to maintain the Protective Safeguards, as well as the fire and theft exclusions. Defendants' proposed reading would render the requirement to maintain the Protective Safeguards a nullity, unless the loss occurred by fire or theft and the Protective Safeguards were either a fire or theft protective device.

Returning to the dispute presently joined before the Court, the undersigned concludes that the erection and maintenance of a security fence—as one of the bargained-for Protective Safeguards—was a material term of the Policy, without which Plaintiff would not have entered into the insurance contract. As a consequence and because reasonable minds could not conclude otherwise, the Court holds as a matter of law that Defendants' failure to erect and maintain a fence around the Property was a material breach of the Policy. Thus, Praetorian is excused from its contractual obligation to provide coverage for Defendants' loss as a result of the fire. The Court therefore grants summary judgment in favor of Praetorian on its request for a declaratory judgment on this issue.

Because the Court resolves the Motion on Praetorian's claim for declaratory judgment in its favor on the issue of material breach, it need not address Praetorian's other arguments, *viz.,* that the requirement to maintain the fence was a condition precedent to coverage, or that the fence was a fire protective device. Similarly,

because the Court does not rely on any disputed evidence—evidence which relates to whether the fence is a "fire protective device"—the Court need not resolve the parties' evidentiary disagreements on that point. The Court will, however, address Praetorian's argument that Defendants' counterclaims should be dismissed as a matter of law.

**C.     Defendants' Counterclaims**

Praetorian also seeks summary judgment on Defendants' counterclaims, which are predicated on their entitlement to coverage under the Policy. (ECF No. 50 at 11–13.) While Defendants contend that Praetorian was obligated to pay for Defendants' losses under the Policy, they candidly admit that if there is no coverage, their counterclaims fail. (ECF No. 53 at 41.) As discussed above, the Court concludes as a matter of law that Praetorian is not obligated to provide coverage for damages resulting from the fire because Defendants materially breached the insurance contract. Thus, Defendants' counterclaims for a declaratory judgment that Praetorian is obligated to provide coverage, and for breach of contract necessarily fail, and the Court grants summary judgment in favor of Praetorian on these counterclaims.

Praetorian is also entitled to summary judgment its favor on Defendants' statutory and common law bad faith breach of insurance contract claims. Generally, this Court has held that where a party's breach of insurance contract claim fails, the corresponding (and derivative) statutory and common law bad faith breach of insurance contract claims fail as well. *See Johnson v. Am. Nat'l Prop. & Cas. Cos.*, 2019 WL 463026, at *5 (D. Colo. Feb. 6, 2019). *But see Brookshire Downs at Heatherridge Condo. Ass'n., Inc. v. Owners Ins. Co.*, 2019 WL 764480, at *8 (D. Colo. Feb. 21, 2019)

12

(seeking further briefing on the viability of common law and statutory bad faith claims where the plaintiff's breach of contract claim was time-barred). Here, the Court has determined that Praetorian is not obligated to pay under the contract, and as a result Defendants cannot demonstrate that Praetorian breached the contract, much less that it did so in bad faith. Thus, the Court also grants the Motion in favor of Praetorian on Defendants' common law and statutory bad faith breach of insurance contract claims.

## IV. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Plaintiff Praetorian Insurance Company's Motion for Summary Judgment (ECF No. 50) is GRANTED as to all claims;

2. Judgment shall enter in favor of Plaintiff and against all Defendants, and Plaintiff shall have its costs upon compliance with D.C.COLO.LCivR 54.1; and

3. The Clerk shall terminate this action.

Dated this 1st day of March, 2019.

BY THE COURT:

William J. Martínez
United States District Judge