IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 17-cv-2034-WJM-SKC

PRAETORIAN INSURANCE COMPANY,

    Plaintiff,

v.

AXIA CONTRACTING, LLC, and
255 BLACKHAWK HOSPITALITY, LLP,

    Defendants.

## ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Praetorian Insurance Company ("Praetorian") brought this lawsuit seeking a declaratory judgment that it has no obligation to pay insurance benefits under a builder's risk policy issued to Defendants Axia Contracting, LLC ("Axia") and 255 Blackhawk Hospitality, LLP ("Blackhawk") (jointly, "Defendants").

This matter is before the Court on Praetorian's Renewed Motion for Summary Judgment ("Motion").  (ECF No. 83.)  For the reasons explained below, the Motion is denied.

### I. STANDARD OF REVIEW

Summary judgment is warranted under Federal Rule of Civil Procedure 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986).  A fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim.  *Wright v.*

*Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001). An issue is "genuine" if the evidence is such that it might lead a reasonable trier of fact to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

In analyzing a motion for summary judgment, a court must view the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). In addition, the Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial. *See Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

## II. BACKGROUND

### A.   Factual Allegations[1]

On June 19, 2017, Defendants were in the process of constructing a hotel (the "Project") at 255 Blackhawk Street, Aurora, Colorado (the "Property"). (ECF No. 83 ¶ 1.) Blackhawk owned the Property, and Axia was the general contractor for the Project. (*Id.* ¶¶ 2–3.)

Early in the morning on June 19, 2017, a fire occurred at the Property damaging the unfinished hotel structure. (*Id.* ¶ 4.) The City of Aurora Fire Department investigated the fire and a fire investigator concluded that it was "result of an intentional and direct human act" and classified the fire as "incendiary . . . that is deliberately set

---

[1] The following factual summary is based on the parties' briefs on the Motion and documents submitted in support thereof. These facts are undisputed unless attributed to a party or source. All citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination.

with the <u>intent</u> to cause the fire." (*Id.* at ¶ 5; ECF No. 83-1 at 10 (emphasis in original).)

At the time of the fire, Praetorian had issued to Defendants a builder's risk insurance policy, policy number P0033IM106828-00 (the "Policy"). (ECF No. 83 ¶ 6.) The Policy covers perils during the course of construction, subject to the terms and conditions of the Policy, including the terms of the Builders' Risk Coverage as well as any endorsements and schedules identified on the schedule of coverages. (*Id.* ¶¶ 7–8; *see* ECF No. 83-2.) Under the Policy, Praetorian is responsible for "risks of direct physical loss or damage unless the loss is limited or caused by a peril that is excluded." (ECF No. 83-2 at 20.)

The Policy includes a "Protective Devices Schedule" and a "Protective Devices Endorsement" ("PDE"). (ECF No. 83-2 at 50–51.) The Protective Devices Schedule lists the following protective devices or services:

> Site will be protected with chain link fencing, or other similar security fencing, at least 6 ft. in height completely enclosing the jobsite.
>
> All entrance and access gates shall remain securely locked during non-working hours.
>
> Jobsite will be fully illuminated each night with lights continuously from sunset to sunrise.

(ECF No. 83 ¶ 10; ECF No. 83-2 at 50.) The PDE added both "other conditions" and "perils excluded." Under "other conditions," the PDE stated:

> **Protective Devices** – "You" are required to maintain, at all times during the policy period, the protective devices and services described on the Protective Devices Schedule.

(ECF No. 83 ¶ 9; ECF No. 83-2 at 51.) Under "perils excluded," the PDE added the

following language:

> The following exclusion is added . . . under Perils Excluded [of the Builders' Risk Coverage] and applies only when a device or service, shown on the Protective Devices Schedule, provides fire protection:
>
> "We" do not pay for loss caused by fire if, prior to the fire, "you":
>
> a.  had knowledge of any suspension or impairment in the protective device or service described on the Protective Devices Schedule and did not notify "us"; or
>
> b.  failed to maintain in complete working order, the fire protective device or service described on the Protective Devices Schedule which "you" control.

(ECF No. 83 ¶ 9; ECF No. 83-2 at 51.) The PDE similarly excludes losses caused by theft in the absence of a Protective Safeguard that provides theft protection. (ECF No. 83 ¶ 9; ECF No. 83-2 at 51.)

The parties agree that at the time of the fire, the Project jobsite was "not enclosed with chain link fencing at least 6 feet in height, and because the jobsite was not completely enclosed in such fencing, all entrance and access gates were not securely locked." (ECF No. 83 ¶ 12; ECF No. 53 ¶ 12.)

Defendants sought coverage from Praetorian for losses and damages caused by the fire. (ECF No. 83 ¶ 13.) On August 23, 2017, Praetorian denied coverage for failure to comply with the Policy. (*Id.* ¶ 14.)

**B.   Procedural History**

The same day that Praetorian denied coverage for losses from the fire, it filed the instant action seeking a declaratory judgment that it was not required to pay for

losses at Defendants' jobsite. (ECF No. 1 at 4–6, ¶¶ 19–28.) In response, Defendants filed counterclaims seeking a declaratory judgment regarding the parties' rights, obligations and duties under the Policy, as well as claims for breach of contract and statutory and common law bad faith. (ECF No. 23 at 19–22, ¶¶ 58–78.)

At a scheduling conference before U.S. Magistrate Judge Kristen L. Mix, the parties requested that discovery be conducted in two phases: an initial period focused on insurance coverage issues and a second period, if necessary, on Defendants' counterclaims. (ECF Nos. 41–42.) Judge Mix granted the request.[2] (ECF No. 41.)

On April 11, 2018, Praetorian filed a motion for summary judgment asserting: (1) that the Policy did not provide coverage due to Defendants' failure to comply with the Policy, which was a condition of coverage; and (2) that coverage under the Policy was also precluded by an exclusion for losses caused by fire. (ECF No. 50.) Defendants filed their response on May 9, 2018 (ECF No 54), Praetorian filed its reply on June 6, 2018 (ECF No. 59), and Defendants filed their sur-reply on June 13, 2018 (ECF No. 60).

The Court sought supplemental briefing from the parties addressing "the materiality of the requirement to maintain the protective devices and services described on the Protective Devices Schedule." (ECF No. 62.) Specifically, the Court asked the parties to address "the question of whether Defendants' failure to erect and maintain a chain link or similar security fencing at least six feet high completely enclosing the entire jobsite constitutes a material breach of the insurance contract." (*Id.*) The parties

---

[2] This action was reassigned to Magistrate Judge S. Kato Crews on August 6, 2018. (ECF No. 61.)

simultaneously submitted their supplemental briefs on February 22, 2019. (ECF Nos. 63–64.)

On March 1, 2019, the Court granted summary judgment in favor of Praetorian, determining that: (1) the erection and maintenance of a security fence was a material term of the Policy; (2) Defendants' failure to comply with this term was a material breach of the Policy; and (3) Praetorian was excused from its contractual obligation to provide coverage for Defendants' loss as a result of the fire. (ECF No. 65.) Because the Court resolved the Motion on the issue of material breach, it did not address Praetorian's other arguments in favor of summary judgment. (*Id.* at 11.) Defendants appealed the Court's order. (ECF No. 68.)

On December 31, 2019, the Tenth Circuit determined that the Court erred in concluding that Defendants' failure to maintain fencing and secured access was a material breach of the Policy. (ECF No. 76 at 4–5.) The action was remanded to consider the alternative bases raised in Praetorian's Motion for Summary Judgment.[3] (*Id.* at 5.)

On February 18 and 28, 2020, Defendants and Praetorian, respectively, submitted supplemental briefing on the Motion. (ECF Nos. 84, 87.)

## III. ANALYSIS

The present dispute is, at heart, one of contract interpretation. Under Colorado

---

[3] The Court re-docketed Praetorian's Motion as a new docket entry titled "Renewed Motion for Summary Judgment." (ECF No. 83.) On February 6, 2020, the Court informed the parties that it would consider ECF Nos. 53, 59, 60 as the response, reply, and sur-reply, respectively, to the Renewed Motion for Summary Judgment. (ECF No. 81.)

law,[4] courts construe insurance policies "using general principles of contract interpretation." *Greystone Constr., Inc. v. Nat'l Fire & Marine Ins. Co.*, 661 F.3d 1272, 1283 (10th Cir. 2011). Therefore, absent an ambiguity, a policy's language is construed according to its plain meaning. *Id*. However, in recognition of the unique relationship between insurer and insured, courts "construe ambiguous provisions against the insurer and in favor of providing coverage to the insured." *Id*. at 1284 (citing *Cyprus Amax Minerals Co. v. Lexington Ins. Co.*, 74 P.3d 294, 299 (Colo. 2003)). Courts look to the policy as a whole to determine whether an ambiguity is present. *Cary v. United of Omaha Life Ins. Co.*, 108 P.3d 288, 290 (Colo. 2005) (en banc). Disagreements regarding policy interpretation do not necessarily signal, or create, an ambiguity. *Id*. Rather, "[a]n insurance policy is ambiguous if it is susceptible on its face to more than one reasonable interpretation." *Id*. One may not read an ambiguity into a term where none exists in order then to resolve the resulting ambiguity against the insurer. *See Martinez v. Hawkeye-Security Ins. Co.*, 576 P.2d 1017, 1019 (Colo. 1978) (en banc) ("[C]ourts will not force an ambiguity in order to resolve it against an insurer.").

To determine whether a provision is ambiguous, "the instrument's language must be examined and construed in harmony with the plain and generally accepted meaning

---

[4] Neither party objects to the application of Colorado law—or suggests that another state's law applies—to the interpretation of the Policy. (ECF No. 83 at 7; ECF No. 53 at 8–13.) Federal courts sitting in diversity apply the forum state's choice of law principles. *U.S. Aviation Underwriters, Inc. v. Pilatus Bus. Aircraft, Ltd.*, 582 F.3d 1131, 1143 (10th Cir. 2009). Colorado's choice-of-law rules provide that an insurance contract is governed "by the law of the state with the most significant relationship to the insurance contract." *Berry & Murphy, P.C. v. Carolina Cas. Ins. Co.*, 586 F.3d 803, 808 (10th Cir. 2009). Although neither party addresses this issue, the location of the subject matter of the contract, as well as the events giving rise to Defendants' claim, occurred in Colorado. (ECF No. 15 ¶ 10.) Colorado therefore has the most significant relationship to the Policy. *See Berry & Murphy*, 586 F.3d at 808.

of the words employed, and reference must be made to all the provisions of the agreement." *Radiology Prof'l Corp. v. Trinidad Area Health Ass'n, Inc.*, 577 P.2d 748, 750 (Colo. 1978) (en banc). Courts should avoid "strained constructions" in favor of "common constructions," and technical and legal definitions should also be avoided. *Dish Network Corp. v. Arch Specialty Ins. Co.*, 989 F. Supp. 2d 1137, 1144 (D. Colo. 2013). "In other words, the plain meaning of the words should be employed in a lay manner consistent with what would be understood by a person of ordinary intelligence." *Id.*

Praetorian argues that the Policy does not provide coverage for Defendants' losses for two reasons: (1) Defendants failed to maintain the scheduled protective devices at the Property, which was a condition of coverage; and (2) Defendants' losses are excluded by the PDE. (ECF No. 83 at 1.) The Court will consider each argument in turn.

### A.   Whether a Fence was a Condition Precedent to Coverage

Praetorian argues that the Policy does not provide coverage for Defendants' losses resulting from the fire because Defendants failed to maintain the required protective devices on the Property. (ECF No. 83 at 7.) Praetorian argues that because "Defendants cannot show they satisfied this condition to coverage," they "are not entitled to coverage for this loss." (*Id.* at 8.) Defendants dispute Praetorian's characterization of the fence requirement as a condition precedent to coverage. (ECF No. 59.) Instead, they argue that the PDE is an "exclusion." The Court agrees with Defendants.

Where an insurance contract contains a condition precedent, performance of that condition is a prerequisite to recovery on the policy. *See Hurt v. N.Y. Life Ins. Co.*, 51 F.2d 936, 938 (10th Cir. 1931); Restatement (First) of Contracts, § 250 (1932) (recognizing that a condition precedent is a fact which must exist or occur before a duty of immediate performance of a promise arises).

Under Colorado law,

> [a] stipulation in a contract may be a condition or promise, depending on the intention of the parties. An intent to create a condition in a contract must appear expressly or by clear implication. In cases of doubt as to the intention of the parties, courts resolve the doubts in favor of an interpretation making the engagement a promise rather than a condition.

*Charles Ilfeld Co. v. Taylor*, 156 Colo. 204, 209 (Colo. 1964) (internal citations omitted); *Mularz v. Greater Park City Co.*, 623 F.2d 139, 142 (10th Cir. 1980) ("Where the intention or meaning of a contract is in question . . . the tendency of the courts is to construe it as a covenant or a promise rather than a condition unless it is plain that a condition precedent was intended."); *see also Sec. Mut. Cas. Co. v. Century Cas. Co.*, 531 F.2d 974, 976 (10th Cir. 1976) (recognizing that a provision "will not be construed as a condition precedent unless that intention is clearly and unequivocally stated in the contract").

The Policy does not plainly reflect an agreement that the fence requirement is a condition precedent to coverage under the Policy. To be clear, the PDE includes a heading titled "OTHER CONDITIONS" which states that "'You' are required to maintain, at all times during the policy period, the protective devices described on the Protective Devices Schedule." (ECF No. 83-2 at 51.) However, the PDE does not unequivocally

state that the fencing requirement is a *condition precedent* to coverage, or that Praetorian is relieved of all of its Policy obligations if Defendants do not maintain a 6 ft. chain link fence around the Project. Instead, the PDE explicitly provides that failure to comply with the Protective Devices Schedule leads to exclusion of *certain perils*, *i.e.*, losses caused by either fire or theft. (*Id.*)

If the fence requirement were a condition precedent to the Policy, the "Perils Excluded" section of the PDE would be rendered meaningless. Under Praetorian's reading of the PDE, Defendants' failure to maintain a 6 ft. chain fence relieves Praetorian of *all* of its Policy obligations. There would be no reason for the PDE to also provide that Praetorian is not required to pay for losses caused by fire or theft if Defendants "failed to maintain in complete working order, the [fire or theft] protective device or service described on the Protective Devices Schedule." Praetorian's proposed reading of the Policy is therefore inconsistent with the contract construction principles. *See Martinez v. Am. Family Mut. Ins. Co.*, 413 P.3d 201, 203 (Colo. App. 2017) (recognizing that courts "read the provisions of the policy as a whole, construing the policy so that all provisions are harmonious and none is rendered meaningless").

B.     **Whether the Protective Devices Exclusion Applies**

Praetorian also argues that coverage under the Policy is excluded by the PDE. (ECF No. 83 at 8.)

In insurance coverage disputes, "the insurer has the burden of proving that the facts fall within the policy's exclusions." *Rivelli v. Twin City Fire Ins. Co.*, 359 F. App'x 1, 4 (10th Cir. 2009); *RK Mech., Inc. v. Travelers Prop. Cas. Co. of Am.*, 944 F. Supp.

2d 1013, 1020 (D. Colo. 2011) ("When an insurance company seeks to limit or exclude coverage under the terms of an insurance policy, the insurer bears the burden of proving that a particular loss falls within an exclusion in the contract."). To the extent an insurer seeks to avoid liability, it "must do so in a clear and unequivocal language and must call such limiting conditions to the attention of the insured." *Cyprus Amax Minerals Co.*, 74 P.3d at 306; *J & S Enter., Inc. v. Cont'l Cas. Co.*, 825 P.2d 1020, 1023 (Colo. App. 1991) ("[I]f exclusions are inserted in order to limit the general liability insurance coverage, such exclusions are to be strictly construed against the insurer. Only if exclusions, when viewed as a whole, unambiguously and unequivocally negate coverage are they interpreted in the insurer's favor." (internal citations omitted)).

It is undisputed that the Property was not "protected with chain link fencing, or other similar security fencing, at least 6 ft. in height completely enclosing the entire jobsite" as required by the Protective Devices Schedule, and that Defendants' losses were caused by fire. (*Id.* ¶¶ 4–5, 12; ECF No. 83-2 at 50.) Accordingly, Praetorian contends that the following exclusion in the PDE applies: "'We' do not pay for loss caused by fire if, prior to the fire, 'you': . . . b. failed to maintain in complete working order, the fire protective device or service described on the Protective Devices Schedule which 'you' control." (ECF No. 83-2 at 51.)

A determination about whether the exclusion applies to Defendants' losses depends on whether the required fence is a "fire protective device." Because the terms "fire protection" and "fire protection device" are not defined by the Policy, these terms should be given their plain and ordinary meaning. *Compass Ins. Co. v. City of Littleton*, 984 P.2d 606, 613 (Colo. 1999) (en banc).

The language of the Protective Device Schedule demonstrates that the fundamental purpose of a fence is to provide security, not fire protection. After all, the Protective Devices Schedule requires "chain link fencing, or *other similar security fencing . . . .*" (ECF No. 83-2 at 50 (emphasis added).) The fact that a fence could hypothetically reduce the chance of arson does not resolve the question of whether a fence is a fire protection device. Indeed, most security devices—such as alarms, locks, or cameras—would somewhat reduce the possibility of a multitude of property crimes, including arson. However, a person of ordinary intelligence would not ordinarily consider such security devices—or, for that matter, a security fence—to be *fire protection* devices. *See Dish Network*, 989 F. Supp. 2d at 1144 (interpreting contractual language in a lay manner consistent with what would be understood by a person of ordinary intelligence and avoiding strained constructions).

Praetorian does not suggest that the required fence would provide any fire protection aside from mitigating the possibility of arson.[5] The Protective Devices Schedule does not require that the fence be built with any fire retardant materials. Indeed, because Defendants could have complied with the Protective Devices Schedule by constructing "or similar security fencing," Defendants could have constructed a *wooden* fence, which arguably could have *increased* the Property's fire risk.

Accordingly, the Court finds that the plain and ordinary meaning of the term "fire protective device" does not include "chain link fencing, or other similar security fencing,

---

[5] For example, a 6 ft. chain link fence would not stop a fire from spreading to the Property. It could, however, restrict firefighters' access to the Property during a fire incident.

at least 6 ft. in height." Because the Policy language is unambiguous, the Court need not consider extrinsic evidence to interpret the PDE.[6]  *See City of Golden v. Simpson*, 83 P.3d 87, 93 (Colo. 2004) ("If the terms are clear, a court will neither look outside the four corners of the instrument, nor admit extrinsic evidence to aid in interpretation.").

If Praetorian considered a fence to be a fire protection device, it could have specified as much in the Policy using clear and unequivocal language.  *See Cyprus Amax Minerals Co.*, 74 P.3d at 306–07.  It did not do so.  Accordingly, Praetorian has failed to establish that Defendants' losses fall within an exclusion of the contract.  *See RK Mech., Inc.*, 944 F. Supp. 2d at 1020.

Praetorian's request for summary judgment is therefore denied with respect to its declaratory judgment claim.

## C.     Defendants' Counterclaims

Defendants have asserted four counterclaims in this action: (1) declaratory judgment as to coverage, (2) breach of contract, (3) unreasonable denial of benefits under Colo. Rev. Stat. §§ 10-3-1115 and 10-3-1116, and (4) common law bad faith breach of insurance contract.  (ECF No. 23 at 19–21.)

Praetorian seeks summary judgment on Defendants' counterclaims, which are predicated on their entitlement to coverage under the Policy.  (ECF No. 83 at 11–13.) Praetorian argues that because Defendants are not entitled to insurance coverage,

---

[6] Even if a term is not ambiguous, the Court is able to consider "definitions generally accepted by the courts, the industry, and authoritative secondary sources" to interpret an undefined contractual term.  *See Travelers Indem. Co. v. Howard Elec. Co.*, 879 P.2d 431, 434 (Colo. App. 1994). Thus, although the Court is permitted to consider the secondary sources provided by the parties, it will not do so here because the plain and ordinary meaning of a "fire protection device" is clear.

13

Defendants' counterclaims fail as a matter of law. *See Tynan's Nissan Inc. v. Am. Hardware Mut. Ins. Co.*, 917 P.2d 321 (Colo. App. 1995) (recognizing that where a policy provides no coverage, an insurer cannot be held liable on a theory of bad faith refusal to pay). Praetorian also argues that "[e]ven if Defendants could demonstrate an entitlement to coverage under the Policy, they cannot demonstrate that Praetorian acted unreasonably in denying their claim." (ECF No. 83 at 12.)

As explained above, Praetorian has not established that Defendants' losses are excluded from coverage by the PDE. A reasonable trier of fact could therefore find that Praetorian breached the Policy[7] or acted unreasonably in denying coverage of Defendants' claim related to the June 19, 2017 fire.[8]  (*Id.* ¶ 14.) *See Zolman v. Pinnacol Assur.*, 261 P.3d 490, 497 (Colo. App. 2011) (recognizing that reasonableness under the circumstances is ordinarily a question of fact for the jury).

Accordingly, Praetorian's request for summary judgment is therefore also denied with respect to Defendants' counterclaims.

---

[7] To prevail on their breach of contract counterclaim, Defendants must show that: (1) a contract existed; (2) Defendants performed their obligations under the contract or were excused from doing so; (3) Praetorian failed to perform its obligations under the contract; and (4) as a result, Defendants sustained damages. *Western Distr. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992) (en banc).

[8] An insurer breaches its statutory duty under Colo. Rev. Stat. § 10-3-1115 if there "was no reasonable basis to delay or deny the claim for benefits." *Kisselman v. Am. Family Mut. Ins. Co.*, 292 P.3d 964, 974 (Colo. App. 2011); Colo. Rev. Stat. § 10-3-1115(2) (stating "an insurer's delay or denial was unreasonable if the insurer delayed or denied authorizing payment of a covered benefit without a reasonable basis for that action."). Likewise, to establish a common law bad faith claim under Colorado law, an insured must establish "proof of unreasonable conduct and knowledge that the conduct is unreasonable or a reckless disregard of the fact that the conduct is unreasonable." *Travelers Ins. Co. v. Savio*, 706 P.2d 1258, 1276 (Colo. 1985) (en banc).

## IV. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Praetorian's Motion for Summary Judgment (ECF No. 83) is DENIED; and

2. The parties are DIRECTED to jointly contact Judge Crew's chambers by no later than **September 25, 2020** to set a Scheduling Conference, or such other proceeding as Judge Crews deems appropriate to move this action forward.

Dated this 23rd day of September, 2020.

BY THE COURT:

William J. Martínez
United States District Judge