IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge S. Kato Crews

Civil Action No. 1:17-cv-02034-WJM-SKC

PRAETORIAN INSURANCE COMPANY,

    Plaintiff,

v.

AXIA CONTRACTING, LLC, *et al*.

    Defendants.

---

**ORDER RE:
MOTION FOR SANCTIONS, MOTION TO EXTEND DISCOVERY, AND
MOTION TO AMEND COMPLAINT [DKTS. 107, 111, 117]**

---

In 2017, a fire caused extensive damage to a hotel owned by Defendant 255 Blackhawk Hospitality, LLP ("Blackhawk"). The hotel was still under construction at the time of the fire. Defendant Axia Contracting, LLC ("Axia"), was the general contractor on the project. The hotel was insured by a policy issued by Plaintiff Praetorian Insurance Company ("Praetorian").

The Amended Complaint [Dkt. 15] alleges there was no security fencing on three sides of the property and the fire was caused by arson committed by individuals who accessed the construction site. Based on Defendants' alleged failure to install protective devices around the hotel, Praetorian filed this declaratory judgment action seeking a determination it did not owe Defendants insurance benefits related to the

1

fire. Defendants answered and asserted counterclaims for, *inter alia*, bad faith breach of contract and unreasonable delay or denial of insurance benefits under Colo. Rev. Stat. §§ 10-3-115 and -1116.

The Court bifurcated discovery in this case. The first phase was to focus on discovery relevant to the policy's Protective Devices Endorsement. [Dkt. 42.] If necessary, the parties would then conduct discovery relevant to Defendants' counterclaims. Following this first phase of discovery, summary judgment briefing, a remand from the Tenth Circuit, and another round of summary judgment motions, the parties commenced the second phase of discovery. [Dkt. 92.]

In September 2021, during the Rule 30(b)(6) deposition of Axia, Jeff Schaumann (a member of Axia) testified to a 2017 legal dispute between Defendants Blackhawk and Axia ("*Blackhawk v. Axia*") which involved the lack of fencing around the hotel, Blackhawk's losses from the fire, and a $2 million settlement between them. This was the first time Praetorian heard of *Blackhawk v. Axia*. Based on this testimony, Praetorian asked Defendants to supplement their written discovery responses. They did so and produced nearly 16,000 pages of new documents claiming these new materials were nonresponsive to the discovery requests.[1] Defendants produced these new documents in two supplements in October 2021, and one supplement in November 2021.

---

[1] The Court has not reviewed the entirety of the 16, 000 pages. Rather, it has reviewed a sufficient sample of these documents to satisfy itself that the forthcoming findings, conclusions, and orders are justified.

Praetorian filed the present motion seeking sanctions for this belated disclosure. [Dkt. 107.] Also before the Court is Praetorian's request to amend its complaint and its reply to Defendants' counterclaims. [Dkt. 117.] In addition, Defendants have moved to extend the deadline for serving written discovery. [Dkt. 111.]

### A.   MOTION FOR SANCTIONS

#### 1.   Legal Principles

Federal Rule of Civil Procedure 26(a)(2)(E) requires parties to supplement their disclosures "when required under Rule 26(e)." Rule 26(e)(1)(A) provides a party must supplement when "the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Supplementation is a means for "correcting inaccuracies, or filling the interstices of an incomplete report based on information that was not available at the time of the disclosure." *Mullin v. Hyatt Residential Grp., Inc.*, No. 13-cv-2348-WJM-NYW, 2015 WL 1502379, at *3 (D. Colo. Mar. 27, 2015) (quoting *Aid for Women v. Foulston*, 2005 WL 6964192, *3 (D. Kan. July 14, 2005)). When "a party fails to provide information . . . required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c). In

3

addition, a court may award attorney's fees or impose other appropriate sanctions, including those enumerated in Rule 37(b)(2)(A)(i)-(vi).

Praetorian seeks sanctions in the form of judgment in its favor and dismissal of the counterclaims, as contemplated by Rule 37(b)(2)(A)(v) and (vi). [Dkt. 107.] When a party violates Rule 26(e) by failing to timely supplement discovery responses, the determination of whether a Rule 26(e) violation is justified or harmless is entrusted to the broad discretion of the district court. *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999). "A district court need not make explicit findings concerning the existence of a substantial justification or the harmlessness of a failure to disclose." *Id.* "Nevertheless, the following factors should guide its discretion: (1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness." *Id.*

### 2. Praetorian's Discovery Requests

This dispute involves three separate rounds of written discovery Praetorian served on Defendants. Defendants did provide timely responses and documents to these respective requests at the time they were made, but they provided no materials related to *Blackhawk v. Axia* or the completion and sale of the hotel after the fire. Defendants did not produce the latter categories of documents until October and November 2021 ("Late Disclosures").

4

### i.      Praetorian's January 31, 2018 Requests for Production

Pertinent here, Praetorian served the following requests for production on Blackhawk and Axia:

> 3. Produce any documents reflecting or regarding any communications or correspondence *between you*, any insurance agent for you, Praetorian and/or Safehold Special Risk regarding the *presence or absence of any fencing* at the Project.
>
> 5. Produce any documents *reflecting or regarding* the purchase, rental, and/or *installation of fencing* for the Project.
>
> 6. Produce any documents *reflecting or regarding any decision not to purchase, rent, and/or install fencing* for the Project.

[Dkt. 107-5 (emphasis added).]

In their Late Disclosures, Defendants produced a cache of documents, including, for example:

- Emails between Jeff Schaumann and an adjuster at Liberty Mutual (Axia's liability insurer) discussing Liberty Mutual's assessment that "there is some liability for Axia failing to secure the premises," and agreeing to settle Blackhawk's liability claim against Axia for $2 million;

- A September 7, 2017 email from Kelly Zander (a partner in Blackhawk) advising Blackhawk planned to sue Axia because "Axia is the negligent party here and definitely did not follow their own policy;"

- A September 27, 2017 letter from Blackhawk to Axia stating, "the fire damage and any resulting delay was caused by or contributed to by the negligence of Axia and its breaches of contract;" and,

- A March 7, 2018 email from Mr. Zander stating, "Axia didn't install the fence per the insurance policy … . Axia somehow and inexplicably allowed an open gas can to be left at the site and next to a pile of

5

lumber. Without a shadow of a doubt Axia's negligence led to the fire…"

[*See* Dkt. 107 at pp.4-5 and Dkt. 107-7 (Exhibit G).] On their face, these documents are responsive to Praetorian's January 31, 2018 requests for production, but were not produced by Defendants until the fall 2021.

### ii.     Praetorian's January 19, 2021 Requests for Production

On January 19, 2021, Praetorian served Defendants additional document requests seeking documents regarding "construction of the project (including any related contracts), loans, [and] the loss or claim and/or sale of the project." [Dkt. 107 at p.8 (emphasis added) and Dkt. 107-8 (Exhibit H).]

In their Late Disclosures, Defendants included:

- Documents related to a $5 million line of credit obtained by the Blackhawk partners for the project;

- Emails with realtor David Erb in July 2017 after the loss and regarding Defendants' financial position, ability to complete the project, and interpretation of the Protective Devices Endorsement;

- Emails between Mr. Schaumann and Mr. Zander regarding potential cash contributions to bring the construction loans into balance and the decision to sell the project in September 2017;

- A letter regarding an indemnification claim tendered by Axia's liability carrier to a subcontractor, AGC Company, whom it believed may be responsible for the fire as a result of leaving gas cans at the construction site;

- Spreadsheets prepared in the fall of 2017 in conjunction with Defendants' marketing the property to potential buyers, which appears to calculate the repair costs related to the fire loss at $2.4 or $2.6 million, in contrast to the $2.9 million indicated in connection with the insurance claim; and,

- The construction contract entered by Axia Contracting Texas, LLC and LN Hospitality Denver, LLC, the entity that purchased the project in 2018.

[*See* Dkt. 107 at pp.5-6 and Dkt. 107-10 (Exhibit J).] It is again mystifying how there could be any doubt these documents are responsive to Praetorian's January 19, 2021 requests for production.

In addition, in responding to the original discovery requests, Defendants changed Praetorian's definition(s) of "Project" to limit it only to pre-fire construction, which would exclude documents related to the completion of the project after the fire. They also added the definition of "Lender" and "Construction Loan" to refer only to their loan from First National Bank, which would exclude the $5 million line of credit used to finish the project. [Dkt. 107-9 (Exhibit I).]

### iii. Praetorian's May 7, 2021 Requests for Production

In May 2021, Praetorian issued further discovery to Defendants requesting budgets or estimates for construction, and communications with LN Hospitality regarding the sale of the property. [Dkt. 107-11.] Defendants' original position was all responsive documents had been produced. However, in addition to the documents described above, Defendants' Late Disclosures included emails and bids sent by Mr. Schaumann to LN Hospitality during sales negotiations, the construction contract, and 20 draw requests submitted to LN Hospitality during construction showing the actual cost to complete the project. Under the broad scope of discovery, these

7

additional documents are responsive to Praetorian's May 2021 requests for production.[2]

### 3. Discussion

Rule 26(e)(1)(A) requires *timely* supplementation of disclosures. Fed. R. Civ. P. 26(e)(1)(A). The Court finds Defendants' second, third, and fourth supplemental disclosures are untimely in violation of Rule 26(e) because they were made on October 4 and 14, 2021, and November 3, 2021, respectively, disclosing responsive documents from 2017 and 2018. Defendants do not contend these were recently discovered documents or the documents only recently came into their possession, custody, or control. The question, therefore, is whether Defendants' violation of Rule 26(e) is substantially justified or harmless. While the Court is not required to make specific findings in this regard, the Court shares some findings to lend context to its ruling.

#### i. Substantially Justified

Defendants' explanations for the Late Disclosures are various and unsatisfying. For example, they contend Praetorian requested production of communications with third parties and not those between Defendants. [Dkt. 119 at p.9.] They argue, therefore, any communications between the two Defendants

---

[2] Defendants argue the bid for completion of construction is nonresponsive because the contract is between LN Hospitality and Axia Contracting Texas, LLC, a different corporate entity. But the request for production asks for budgets produced by Defendants or any third party. Furthermore, to the extent the sale of the property was contingent on the cost of completion, these bids would nevertheless be relevant and responsive. [Dkt. 107-11 at pp.4-5.]

8

regarding *Blackhawk v. Axia* need not have been produced. But the definition of "You" in the written discovery clearly refers to both Defendants. [Dkt. 107-5 at p.2.] Thus, internal communications were contemplated and requested, and withholding them on that basis was improper.

Defendants also argue that while Praetorian requested documents and information regarding the presence or absence of the fence, the *Blackhawk v. Axia* documents concern only the consequences of Axia's failure to install a fence. [*See* Dkt. 119 at p.8.] But this is semantics. Defendants attempt to parse a distinction between the absence of fence with a failure to install one. This is a distinction without a difference. Moreover, the definition of "regarding" (as used in Praetorian's requests) is not nearly so narrow as Defendants would have it. Defendants' entire argument here borders on specious. Documents and communications discussing the consequences of *failing to install* a fence plainly regard the absence of a fence and should have been timely produced as responsive to Praetorian's applicable requests.

The Court also agrees with Praetorian that Defendants improperly narrowed the discovery requests by changing Praetorian's definitions. The Court has reviewed Defendants' responses and although they are correct that Praetorian could have discovered the changes Defendants made on its own, discovery should never be a game of gotcha. Defendants did not object to any of Praetorian's definitions to put Praetorian on notice of their changes, nor (apparently) did Defendants confer with Praetorian over the definitions before responding to the discovery. Surreptitiously

9

altering the definitions or the scope of Praetorian's requests was improper. Having done nothing to alert Praetorian to the altered scope of Defendants' responses, it was not Defendants' purview to re-write Praetorian's discovery requests.

The Court is also not persuaded by Defendants' reliance on the general objections they included with their discovery responses to justify the Late Disclosures. Boilerplate general objections are tantamount to no objection at all. *Bottoms v. Liberty Life Assur. Co. of Bos.*, No. 11-CV-01606-PAB-CBS, 2011 WL 6181423, at *7 (D. Colo. Dec. 13, 2011); *EEOC v. Outback Steak House of Florida, Inc.*, 251 F.R.D. 603, 608 (D. Colo. 2008) ("the burden of showing that the requested discovery is objectionable falls on [the responding party] and it cannot be satisfied by merely asserting a boilerplate objection to discovery without providing concrete substantiation").

Similarly, Defendants' general objections challenging the discovery requests as "overbroad" implicitly concede the requests encompass responsive information but for Defendants' secret modifications to the requests. Defendants were obligated to reasonably construe the discovery requests. *See, e.g., Adolph Coors Co. v. Am. Ins. Co.*, 164 F.R.D. 507, 518 (D. Colo. 1993). They were not free to alter them in silence and summarily dismiss them as "overbroad." Fed. R. Civ. P. 37(a)(4) ("an evasive or incomplete . . . response must be treated as a failure to . . . respond"). Likewise, labeling a request as "unduly burdensome" cannot rest solely on that self-serving label. *Bottoms*, 2011 WL 6181423, at *7.

10

### ii.     **Harmlessness**

Praetorian has been prejudiced by these untimely disclosures. While the Court is not persuaded these documents would have affected the summary judgment outcomes—particularly considering District Judge Martinez's statements he would not review extrinsic evidence—Praetorian could have conducted further discovery into these matters or made arguments on summary judgment apart from those concerning the Protective Devices Endorsement in the policy. Praetorian took various depositions (including Defendants' respective Rule 30(b)(6) depositions), hired experts, and pursued legal theories based on what was represented by Defendants' original disclosures. And the untimely disclosures, indeed, alter the factual landscape relevant to the parties' claims and defenses. So the Late Disclosures were not harmless.

Parties to litigation are "required to reasonably construe [the opposing party's] interrogatories and requests for production and conduct a reasonable search for responsive information." *Witt v. GC Servs. Ltd. P'ship*, 307 F.R.D. 554, 568–69 (D. Colo. 2014) (citing *Reinsdorf v. Skechers, U.S.A., Inc.*, 296 F.R.D. 604, 615 (C.D. Cal. 2013)). The Court does not expect perfection and will not "'infer nefarious intent or bad faith' from 'ordinary discovery errors.'" *Id*. But the Court cannot overlook discovery responses, like those here, that omit or withhold information plainly responsive and unequivocally within the knowledge, possession, custody, and control, of the responding parties. *Id*. ("A party answering interrogatories [and requests for

11

production] must provide to the requesting party all 'information that is available to it and that can be given without undue labor and expense.'") (citing *Lynn v. Monarch Recovery Mgmt, Inc.*, 285 F.R.D. 350, 360 (D. Md. 2012)). Given the documents in their possession at the time the requests were made, Defendants' initial discovery responses were inadequate and patently deficient. The Court finds Defendants' Rule 26(e) violation was neither substantially justified nor harmless.

For these reasons, the Court finds sanctions (other than dismissal or judgment in Praetorian's favor) are appropriate. Therefore, Praetorian's Motion for Sanction is GRANTED IN PART, DENIED IN PART, and TAKEN UNDER ADVISEMENT IN PART. The Court will conduct a hearing over what sanctions are appropriate under the circumstances.

### B.   MOTION TO AMEND

Based on the content of the Late Disclosures, Praetorian seeks to add a claim for breach of contract based on three new theories and amend its reply to the counterclaims. The Court concludes there is good cause to allow Praetorian to amend its pleading and its reply to the counterclaims. The Court declines to engage in a futility analysis at this time (as argued by Defendants)—the futility argument is more efficiently and effectively raised in the context of a motion to dismiss than it is in a response to a motion to amend. *See* Fed. R. Civ. P. 1; *White River Vill., LLP v. Fid. & Deposit Co. of Maryland*, No. 08-cv-00248-REB-MEH, 2013 WL 6168853, at *4 (D. Colo. Nov. 25, 2013); *Fuller v. REGS, LLC*, No. 10-cv-01209-WJM-CBS, 2011

12

WL 1235688, at *3 (D. Colo. Mar. 31, 2011) (the court was guided by pragmatism and efficiency in exercising its discretion to grant motion to amend rather than apply futility analysis). The Motion to Amend is GRANTED.

The Court TAKES UNDER ADVISEMENT, Defendants' Motion to Extend Discovery.

\*   \*   \*

It is ORDERED as follows:

1. the Motion for Sanctions [Dkt. 107] is GRANTED IN PART to the extent it sought sanctions against Defendants for the Late Disclosures; it is DENIED IN PART to the extent it sought judgment or dismissal as a sanction; and it is TAKEN UNDER ADVISEMENT IN PART insofar as the Court will convene a hearing to determine the appropriate sanction(s) to impose;

2. the Motion to Amend is GRANTED;

3. the Motion to Extend Discovery is TAKEN UNDER ADVISEMENT; the Court will convene a status conference after Plaintiff's amendments, Defendants' answer to the amended pleading, and Plaintiff's reply to the counterclaims, are on file to determine what discovery, if any, may be necessary; and,

4. on or before the close of business on June 27, 2022, Praetorian shall docket a clean copy of its Second Amended Complaint. Defendants shall

answer or otherwise respond in accordance with the Federal Rules of Civil Procedure. Thereafter, Praetorian may file its amended Reply;

5. once the amended pleadings are complete, the Court will select a date for the sanctions hearing and status conference, which will occur simultaneously.[3]

Dated: June 23, 2022.

BY THE COURT:

S. Kato Crews
United States Magistrate Judge

---

[3] Within 14 days after service of a copy of this Order, any party may serve and file written objections. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(a). Failure to file written objections will result in a waiver of the right to appeal the non-dispositive order. *See Sinclair Wyo. Ref. Co. v. A & B Builders, Ltd.*, 989 F.3d 747, 782 (10th Cir. 2021) (firm waiver rule applies to non-dispositive orders); *but see Morales-Fernandez v. INS*, 418 F.3d 1116, 1119, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review, such as when a "pro se litigant has not been informed of the time period for objecting and the consequences of failing to object").

14