IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 17-cv-2034-WJM-KAS

PRAETORIAN INSURANCE COMPANY,

    Plaintiff-Counter Defendant,

v.

AXIA CONTRACTING, LLC, and
255 BLACKHAWK HOSPITALITY, LLP,

    Defendants-Counter Plaintiffs.

---

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND
DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

---

In this insurance coverage dispute, Defendants Axia Contracting, LLC and 255 Blackhawk Hospitality, LLC (collectively, "Defendants") and Plaintiff Praetorian Insurance Company ("Plaintiff") file cross motions for summary judgment on the other's various claims for relief.[1] (ECF Nos. 181, 182.) The motions are fully briefed. (ECF Nos. 186, 187, 196, 197.)

For the following reasons, the Court grants in part and denies in part Defendants' cross motion and denies Plaintiff's cross motion.

---

[1] More precisely, Plaintiff moves for summary judgment on "the parties' claims for declaratory judgment and Defendants' counterclaim for breach of contract," whereas Defendants move for summary judgment on "all of the new claims and defenses added by Praetorian in its Second Amended Complaint . . . and Amended Answer to Defendants' Counterclaims." (ECF No. 182 at 30; ECF No. 181 at 30.)

I.     PERTINENT BACKGROUND

In June 2017, Defendants were in the process of constructing a hotel (the "Project") at 255 Blackhawk Street, Aurora, Colorado (the "Property"). (ECF No. 83 ¶ 1.) Blackhawk owned the Property, and Axia was the general contractor of the Project. (*Id.* ¶¶ 2–3.)

On June 19, 2017, a fire damaged the unfinished hotel structure. (*Id.* ¶ 4.) The City of Aurora Fire Department investigated the fire and concluded that it was the "result of an intentional and direct human act." (*Id.* ¶ 5; ECF No. 83-1 at 10.)

At the time of the fire, the Property was covered by a builder's risk insurance policy (the "Policy") issued to Defendants by Plaintiff. (ECF No. 83 ¶ 6.) The Policy covers perils that occur during the course of construction, subject to various terms, conditions, and exclusions. (*Id.* ¶¶ 7–8; *see* ECF No. 83-2.) Specifically, the Policy provides that Plaintiff is responsible for "risks of direct physical loss or damage unless the loss is limited or caused by a peril that is excluded." (ECF No. 83-2 at 20.)

In June 2017, Defendants sought coverage from Plaintiff for losses and damages caused by the fire, estimating the repair cost at $3.1 million. (ECF No. 83 ¶ 13.) In August 2017, Plaintiff denied coverage and filed suit seeking declaratory judgment that it was not required to cover Defendants' losses because Defendants undisputedly failed to maintain a fence around the jobsite as required by the "Protective Devices Endorsement" provision of the Policy. (*Id.* ¶ 14.) Defendants countersued for declaratory judgment regarding the parties' rights, obligations, and duties under the Policy, as well as for breach of contract and statutory and common law[2] bad faith. (ECF

---

[2] In April 2023, Defendants voluntarily dismissed the common law bad faith claim. (ECF

No. 23 at 19–22 ¶¶ 58–78.)

At the parties' request, United States Magistrate Judge Kristen L. Mix ordered discovery to be conducted in two phases: an initial phase focused on insurance coverage issues and a second phase, if necessary, on Defendants' counterclaims. (ECF Nos. 41–42.)

In April 2018, Plaintiff moved for summary judgment, arguing that the Policy did not cover Defendants' losses because they failed to maintain the fence, which constituted a condition precedent to coverage, and that this failure to do so constituted a material breach under the "Protective Devices Endorsement" provision of the Policy, thereby excusing Plaintiff from further performance, including covering the losses. (ECF No. 50.)

In March 2019, the Court granted summary judgment in Plaintiff's favor on its material breach theory but was subsequently reversed by the Tenth Circuit. (ECF No. 76 at 4–5.) In September 2020, the Court on remand considered and rejected Praetorian's alternate theories for summary judgment. (ECF No. 88.) The case then proceeded to phase two, *i.e.*, discovery on Defendants' counterclaims. (ECF No. 92.)

In September 2021, Plaintiff deposed Jeff Schaumann, an owner of Axia and a partner of Blackhawk, during which it allegedly learned for the first time that, in September 2017—a month after Plaintiff filed this lawsuit—Blackhawk sued Axia, claiming that it was responsible for the loss. (ECF NO. 137 at 4.) Blackhawk and Axia ultimately settled for $2 million. (ECF No. 182 at 6.) Plaintiff also learned that Axia settled with a subcontractor for $30,000 in January 2019. (*Id.* at 7.)

---

No. 167.)

In light of this new information, Plaintiff tendered further discovery requests, after which Defendants disclosed e-mails reflecting Schaumann's apparent belief that partners of Blackhawk had enough money to complete the project despite Defendants' contrary assertions to Plaintiff; documents pertaining to the two settlement agreements; spreadsheets prepared by Schaumann in October 2017 and November 2017 indicating to prospective buyers of the Project that the cost to repair the hotel structure was hundreds of thousands of dollars lower than the estimate Defendants provided Plaintiff in June 2017; and other documents reflecting the actual cost to complete the Project. (*Id.* at 9–10.) Specifically, the October 2017 spreadsheet estimated the cost of reconstruction at $2.6 million, and the November 2017 spreadsheet estimated the cost at $2.4 million. (*Id.* at 4.) Notably, these figures differed from the $3.1 million estimate Defendants provided Plaintiff in June 2017. (*Id.*)

In November 2021, Plaintiff moved for sanctions against Defendants for the late disclosures. (ECF No. 107.) It also moved to amend its pleadings to assert new claims. (ECF No. 117.)

In June 2022, then-United States Magistrate Judge Kato S. Crews granted Plaintiff's sanctions motion. (ECF No. 137.) He first noted that, although Plaintiff served Defendants with three rounds of discovery requests spanning from January 2018 to May 2021, Defendants "provided no materials related to *Blackhawk v. Axia* or the completion and sale of the hotel after the fire" until October 2021 and November 2021, despite these materials being facially responsive to Plaintiff's numerous earlier records requests. (*Id.* at 4, 6.) Judge Crews observed that Defendants "changed Praetorian's definition(s) of 'Project' to limit it only to pre-fire construction, which would

4

exclude documents related to the completion of the project after the fire." (*Id.* at 7.) In Judge Crews's view, "Defendants' explanations for the Late Disclosures are various and unsatisfying," and some "border[] on specious." (*Id.* at 8, 9.) Furthermore, he described Defendants' "altering the definitions of the scope of Praetorian's requests" as "improper" and done "[s]urreptitiously." (*Id.* at 9–10.)

Judge Crews concluded that Plaintiff had been prejudiced by these "inadequate and patently deficient" discovery responses and therefore permitted it to amend its pleadings "to add a claim for breach of contract based on three new theories and amend its reply to the counterclaims." (*Id.* at 12.) He also awarded Plaintiff its "reasonable attorney's fees and costs associated with its Motion for Sanctions." (ECF No. 152 at 4.) But Judge Crews declined to fashion more stringent sanctions, such as dispositive sanctions, because, among other reasons, "Plaintiff failed to assist [him] with exploring alternative sanctions to judgment or dismissal" and Defendants "fell on their sword" for their conduct (while "disavowing any willful conduct on their part").[3] (*Id.* at 4.)

As alluded, Plaintiff's amended complaint relies on three new theories for why it is not required to cover Defendants' losses, totally or partially. (ECF No. 117.) In particular, Plaintiff contends that it need not provide coverage for all or part of Defendants' losses under the Policy's (1) "Misrepresentation, Concealment, or Fraud Condition" provision ("MCF Provision"); (2) "Recoveries" Provision; and (3) "Subrogation" Provision. (*Id.* at 7–8.) The MCF Provision provides:

> This coverage is void as to you and any other insured if, before or after a loss:

---

[3] Later, the Court overruled Plaintiff's objection to Judge Crews's sanctions order, finding that the objection was untimely and failed to show clear error. (ECF No. 215 at 2.)

5

    a. You or any other insured have willfully concealed or misrepresented:

        1) a material fact or circumstance that relates to this insurance or the subject thereof; or

        2) your interest herein.

    b. There has been fraud or false swearing by you or any other insured with regard to a matter that relates to this insurance or the subject thereof.

(ECF No. 182 at 10) (internal quotation marks omitted).

The Recoveries Provision provides:

> If we pay you for the loss and lost or damaged property is recovered, or payment is made by those responsible for the loss, the following provisions apply:
>
>     a. You must notify us promptly if you recover property or receive payment
>
>     b. We must notify you promptly if we recover property or receive payment;
>
>     c. Any recovered expenses incurred by either are reimbursed first;
>
>     d. You may keep the recovered property but you must refund to us the amount of the claim paid or any lesser amount to which we agree; and
>
>     e. If the claim paid is less than the agreed loss due to a deductible or other limiting terms of this policy, any recovery will be prorated between you and us based on our respective interest in the loss.

*Id.* (internal quotation marks omitted).

The Subrogation Provision provides:

> If we pay for a loss, we may require you to assign to us your right of recovery against others. You must do all that is necessary to secure our rights. We do not pay for a loss if you impair this right to recover.

6

> You may waive your right to recover from others in writing before a loss occurs.

*Id.* (internal quotation marks omitted).

Plaintiff contends that coverage is void under the MCF Provision based on Defendants' various alleged misrepresentations, including its June 2017 repair estimate. (ECF No. 181.) It likewise contends that coverage is void under the Subrogation Provision based on the two settlement agreements. (*Id.*) Finally, Plaintiff argues that, in the event it is required to cover Defendants' losses, it is entitled to an offset under the Recoveries Provision. (*Id.*)

In September 2023, both parties moved for summary judgment on Plaintiff's new theories for relief, among other issues. (ECF Nos. 181, 182.)

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986). A fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001). An issue is "genuine" if the evidence is such that it might lead a reasonable trier of fact to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

In analyzing a motion for summary judgment, a court must view the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita*

7

*Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  In addition, the Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial.  *See Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

### III.     ANALYSIS

Both parties contend they are entitled to summary judgment on, among other issues, Plaintiff's three new theories for relief.  (ECF Nos. 181, 182.)  Addressing each theory in turn, the Court grants summary judgment in Defendants' favor on Plaintiff's Subrogation Provision theory but otherwise denies summary judgment on all other issues.

**A.     MCF Provision**

Defendants contend they are entitled to summary judgment on Plaintiff's MCF Provision theory because almost all facts of Defendants' alleged misrepresentations occurred after Plaintiff filed this lawsuit, which cannot be considered to void coverage as a matter of law.  (ECF No. 181 at 16.)  As to Defendants' alleged misrepresentation that occurred before the lawsuit, *e.g.*, the June 2017 estimate, Defendants assert that Plaintiff admitted it has no evidence that Defendants knew or believed that the estimate was inaccurate.  (*Id.*)

Plaintiff counters that the pre- and post-lawsuit evidence undisputedly "establishes that Defendants' concealment of these documents was knowing and deliberate."  (ECF No. 182 at 13.)  It stresses that "[t]here is no dispute that Defendants were aware of these documents since they were created" and that "[i]t was Mr. Schaumann, the 'point person' for Defendants with respect to their disclosures and discovery responses in this lawsuit, who actually prepared both documents in the fall of

2017." (*Id.* at 13–14.) Plaintiff maintains that "[t]here is also no support in Colorado law for restricting the application of fraud clauses in insurance policies to pre-litigation conduct." (ECF No. 187 at 15.)

Initially, the Court addresses the parties' dispute as to whether Colorado law permits an insurer to void coverage under a fraud clause based on a misrepresentation that occurs during litigation. Like the parties, the Court has not located any Colorado authority directly addressing this exact issue. However, in *Sunflower Condo. Assn. v. Owners Ins. Co.*, 2018 WL 2196089 at *3 (D. Colo. 2018) ("*Sunflower*"), the undersigned explained that, to prevail under a fraud clause, an insurer must prove that (1) the insured misrepresented or omitted some fact; (2) the misrepresentations or omissions were material; and (3) the insured had an intent to deceive. *Id.* (citing *Martinez v. Hartford Underwriters Ins. Co.*, 2014 WL 2016569, at *2 (D. Colo. May 15, 2014)); *Hess v. State Farm Mut. Auto. Ins. Co.*, 2024 WL 1012911, at *4 (D. Colo. Mar. 8, 2024) (same). In *Sunflower*, the Court declined to enter summary judgment against an insurer where the insured allegedly made a misrepresentation in a discovery response—that is, after litigation had ensued. 2018 WL 2196089, at *3.

But the Court in *Sunflower* did not explicitly address or consider the legal issue of whether a misrepresentation made during litigation can void coverage under a fraud clause. Instead, the Court's analysis focused on whether an insurer can prevail on a fraud clause where it did not detrimentally rely on the misrepresentation in denying the claim. *Id.* at *4. Having the occasion now to squarely consider the merits of the issue, the Court is persuaded by Defendants' argument (and reliance on copious out-of-state authority) that fraud clauses must be based on pre-litigation misrepresentations, frauds,

9

or concealments. *American Paint Serv., Inc. v. Home Ins. Co. of New York*, 246 F.2d 91 (C.A. 3, 1957) (holding that trial testimony could not be relied upon by the insurer to show that fraud had occurred); *Dodson Aviation, Inc. v. Rollins, Burdick, Hunter of Kansas, Inc.*, 807 P.2d 1319, 1325 (1991) ("The overwhelming majority of jurisdictions hold that only false statements made before legal proceedings have begun can serve to void an insurance policy."); *Ocean-Clear, Inc. v. Continental Cas. Co.*, 462 N.Y.S.2d 251, 258 (1983) ("[I]t is generally accepted that fraud arising after the commencement of an action on a policy does not void the policy.") (citations omitted).[4]

In light of the foregoing, the Court instructs that Plaintiff may rely only on pre-lawsuit facts, such as the June 2017 estimate, to support its MCF Provision claim. On this point, the Court is mindful that the MCF Provision purports to void coverage if Defendants "conceal" or "misrepresent" a material fact or commit a "fraud or false swearing . . . with regard to a matter that relates to this insurance or the subject thereof." The Court perceives little to no evidence[5] refuting the notion that Defendants

---

[4] While the Court is troubled by Defendants' late disclosures, it finds that "it is up to the trial court to determine whether a drastic sanction such as dismissal is warranted for discovery misconduct, including untruthful deposition testimony." *Haydaw v. Farm Bureau Ins. Co.*, 332 Mich. App. 719, 727, 957 N.W.2d 858, 863 (2020) ("To be clear, once an insurer fails to timely pay a claim and suit is filed, the parties' duties of disclosure are governed by the rules of civil procedure, not the insurance policy."). Here, Judge Crews declined to dismiss based on the rules of civil procedure, and while the Court may have reached a different conclusion had it considered the issue in the first instance, Plaintiff did not timely object to Judge Crews's sanctions order, nor demonstrate clear error in its belated objections. The time to more fully redress Plaintiff's injuries caused by Defendants' post-lawsuit conduct has therefore come and gone.

[5] Defendants deny that they concealed evidence. (ECF No. 186 at 12 ("Thus, generally speaking, most of the documents that Defendants produced in their supplemental productions between October 4, 2021 and December 10, 2021 were not produced earlier because Defendants, at the time, either did not believe them to be responsive to any of Praetorian's discovery requests, or believed they had communicated any restrictions on the scope of their responses.").) Simply put, the Court finds this argument utterly unconvincing.

concealed various facts, such as the October 2017 and November 2017 estimates, the settlement agreements, and more. As Judge Crews explained, "Defendants' explanations for the Late Disclosures are various and unsatisfying," and some "border[] on specious." (*Id.* at 8, 9.) Significantly, he described Defendants conduct as "surreptitious." (*Id.*) While the Court agrees with these descriptions (and Defendants did not formally object to them), the October 2017 and November 2017 estimates were nevertheless prepared *after* Plaintiff filed suit in August 2017. Consequently, the Court will not permit Plaintiff to rely on these estimates to void coverage based on the concealment portion of the MCF Provision.

The Court will, however, permit Plaintiff to present evidence of the October 2017 and November 2017 estimates to show that the June 2017 estimate constituted a material misrepresentation under the MCF Provision.[6] Contrary to Defendants' assertion,[7] it is a reasonable inference that Defendants' June 2017 estimate—which was hundreds of thousands of dollars less than the post-lawsuit estimates prepared for

---

[6] The Court notes that Plaintiff appears to suggest that Defendants' alleged misrepresentation regarding their financial ability to rebuild the hotel without coverage from Praetorian constituted a misrepresentation under the MCF Provision. (ECF No. 197 at 3.) Even so, the Court fails to see at this juncture how that misrepresentation was material. That is, the Court does not understand what Defendants' financial position after the fire has to do with Plaintiff's decision to deny the claim. As to relevance, Plaintiff simply asserts that this alleged misrepresentation undermines "the basis of [Defendants'] consequential damages claims." (ECF No. 197 at 11.) That is, Plaintiff does not seem to tie this alleged misrepresentation to its decision to deny the claim.

[7] Defendants assert that "Praetorian has admitted that it has no evidence to support its MCF Claim to the limited extent it is based on conduct predating Praetorian's denial of the Claim." (ECF No. 182 at 15.) The Court is unpersuaded that there is no evidence supporting Plaintiff's MCF Provision argument. To reiterate, it is a reasonable inference (and strong argument, in the Court's view) that the June 2017 repair estimate was a misrepresentation based on what Defendants claimed the repair cost to prospective buyers only months later. *Wagnon*, 146 F.3d at 771 ("[S]o long as [Plaintiff's] misrepresentations were made knowingly and deliberately, the intent to deceive the insurer will be implied.").

11

prospective buyers—is precisely the type of material misrepresentation fraud clauses are designed to prevent.  See *Fashho v. Liberty Mut. Ins. Co.*, 963 N.W.2d 695, 699 (2020) (explaining that an insurer can rely on evidence of fraud obtained after litigation commences if the evidence relates to fraud that took place before the proceedings began).

Indeed, the Court can think of few facts more material in the context of an insurance coverage dispute than an insured's allegedly inflated estimate of the value of a claim.  *Wagnon v. State Farm Fire & Cas. Co.*, 146 F.3d 764, 768 (10th Cir. 1998) (a misrepresentation or omission is material where "a reasonable insurance company, in deciding its course of action, would attach importance" to the matter); *Sunflower*, 2018 WL 2196089, at *6 ("Thus, because a reasonable jury could find that a reasonable insurance company could attach importance to the insured's cost of repair estimate and Plaintiff fails to provide any evidence to the contrary, this argument fails.").

Nevertheless, the Court cannot conclude as a matter of law that the June 2017 estimate constituted a misrepresentation.  The Court observes Defendants' argument that the June 2017 $3.1 million figure was not a misrepresentation even considering the post-lawsuit estimates, as Defendants explain that "[e]stimates change over time." (ECF No. 182 at 7.)  Defendants also suggest "that they attempted to identify and produce documents responsive to Praetorian's discovery requests" and "voluntarily supplemented (and advised Praetorian they would be doing so before any other discovery issues came up)" when they realized that they had failed to turn over responsive documents.  (*Id.* at 20.)  According to Defendants, "[t]hese are not the actions of Defendants intent on concealing information from Praetorian."  (*Id.* at 21.)

12

While the Court finds these explanations anemic at best, they minimally support the inference that the Defendants intended to deceive Plaintiff. Simply put, Defendants' intent in preparing the June 2017 estimate[8] is a question of fact that should be decided by a jury. *See Turley v. State Farm Mut. Auto. Ins. Co.*, 944 F.2d 669, 672 (10th Cir. 1991) ("The materiality of a misrepresentation is a mixed question of law and fact that under most circumstances should be determined by the trier of fact."); *see also Benson v. Allstate Fire & Cas. Ins. Co.*, 2020 WL 227829, at *4 (D. Colo. Jan. 15, 2020) ("Further, whether such statements were material, and whether such statements were made by Plaintiff with an intent to deceive . . . also present genuine disputed issues of material fact, including the quintessential jury responsibility to determine the credibility of witnesses.").

Hence, the Court denies both parties' motions for summary judgment as to the MCF Provision.

**B.    Recoveries Provision**

Recall that the Recoveries Provision states:

> If we pay you for the loss and lost or damaged property is recovered, or payment is made by those responsible for the loss, the following provisions apply:
>
> a.  You must notify us promptly if you recover property or receive payment
>
> b.  We must notify you promptly if we recover property or receive payment;
>
> c.  Any recovered expenses incurred by either are

---

[8] The Court notes that Plaintiff also alleges a MCF Provision violation because Defendants knew and withheld information "that vandals used gasoline left unsecured at the building site to start the underlying fire—a fact Defendants certainly knew in the immediate aftermath of the fire." (ECF No. 244 at 5–6.)

> d. reimbursed first;
>
> d. You may keep the recovered property but you must refund to us the amount of the claim paid or any lesser amount to which we agree; and
>
> e. If the claim paid is less than the agreed loss due to a deductible or other limiting terms of this policy, any recovery will be prorated between you and us based on our respective interest in the loss.

Defendants contend they are entitled to summary judgment on Plaintiff's Recoveries Provision, reading the Provision to apply only if Plaintiff paid Defendants for the loss. (ECF No. 181 at 23.) And because Plaintiff has not yet paid on the claim, Defendants argue that "the Recoveries Provision cannot apply." (*Id.*)

Plaintiff responds that Defendants' "interpretation requires reading words into the condition that are not there." (ECF No. 187 at 20.) By Plaintiff's reading, the Provision can apply if "payment is made by those responsible for the loss," regardless of whether Plaintiff tenders a payment. (*Id.*) To get there, Plaintiff relies heavily on the "grammatical structure of [the Provision's] original text, which separates the two clauses with a comma and the word 'or,' indicating they are alternatives." (*Id.* at 21.)

In a contract case, a motion for summary judgment allows for contract interpretation as a matter of law. *Lake Durango Water Co., Inc. v. Pub. Utils. Comm'n of State of Colo.*, 67 P.3d 12, 20 (Colo. 2003). But before a moving party can attack a contract claim on summary judgment, the moving party must first show that the contract is unambiguous and can be construed as a matter of law. *Stroh Ranch Dev., LLC v. Cherry Creek S. Metro. Dist. No. 2*, 935 F. Supp. 2d 1052, 1055 (D. Colo. 2013).

"In determining whether a provision in a contract is ambiguous, the instrument's language must be examined and construed in harmony with the plain and generally

14

accepted meaning of the words used, and reference must be made to all the agreement's provisions." *Fibreglas Fabricators, Inc. v. Kylberg*, 799 P.2d 371, 374 (Colo. 1990). Mere disagreement between the parties does not necessarily indicate the provision is ambiguous. *Id.* Rather, a contract is ambiguous if it is "fairly susceptible to more than one interpretation." *Id.*

Where a contract is ambiguous, "the meaning of its terms is generally an issue of fact to be determined in the same manner as other factual issues." *E. Ridge of Fort Collins, LLC v. Larimer & Weld Irr. Co.*, 109 P.3d 969, 974 (Colo. 2005) (en banc). Courts must then give effect to the intention of the parties by considering "competent evidence bearing upon the construction given to the instrument by the parties themselves, by their acts and conduct in its performance." *Id.* Thus, when a court determines that a document is ambiguous, it may then consider parol evidence to explain or clarify the meaning of a document or the effect of its provisions. *Id.*

The Court concludes that the Recoveries Provision is ambiguous on its face. While the Court thinks Defendants' interpretation makes more practical sense than Plaintiff's—indeed, what would Plaintiff be "recovering" if it can prevail under this Provision without having first tendered a payment?—the Court finds Plaintiff's grammatical and structural argument to be reasonable as well. Thus, because the Recoveries Provision is "fairly susceptible to more than one interpretation," *Fibreglas Fabricators, Inc.*, 799 P.2d at 374, the Court concludes that it is ambiguous and must therefore be interpreted by the trier of fact after considering "competent evidence bearing upon the construction given to the instrument by the parties themselves," *E.*

*Ridge of Fort Collins, LLC*, 109 P.3d at 974.[9]

In any event, even assuming Defendants have the better reading of the Recoveries Provision, the Court sees no reason why the Provision would not apply should a jury find that Plaintiff breached the contract and must cover Defendants' losses. Hence, it would be premature at this juncture to grant summary judgment in Defendants' favor.

In sum, the Court denies both parties' motions for summary judgment as to the Recoveries Provision.[10]

**C.    Subrogation Provision**

Defendants contend they are entitled to summary judgment on the Subrogation Provision. (ECF No. 181.) Specifically, they argue that the Subrogation Provision does not apply because (1) Defendants waived their right to recover from others in writing before the fire occurred; (2) the anti-subrogation rule precludes an insurer from seeking to recover from an insured; and (3) Plaintiff waived any right to subrogation by denying the claim and letting the statute of limitations to lapse. (ECF No. 181 at 24, 27.)

Plaintiff responds that, while Blackhawk and Axia waived their subrogation rights against each other, "it is undisputed that Blackhawk successfully pursued a liability claim against Axia and Axia successfully pursued a claim against [its subcontractor]."

---

[9] The Court recognizes that courts "construe ambiguous provisions against the insurer and in favor of providing coverage to the insured." *Greystone Constr., Inc. v. Nat'l Fire & Marine Ins. Co.*, 661 F.3d 1272, 1283 (10th Cir. 2011) (citing *Cyprus Amax Minerals Co. v. Lexington Ins. Co.*, 74 P.3d 294, 299 (Colo. 2003)). This principle is inapposite here, however, since the Recoveries Provision does not pertain to providing coverage to an insured, but merely stands to offset an insurer's losses in certain circumstances.

[10] To the extent Defendants argue that the settlement agreements vitiate Plaintiff's right to recover under the Recoveries Provision, the Court agrees with Plaintiff that Defendants could not modify the Policy without Plaintiff's consent. (ECF No. 22.)

16

(ECF No. 187 at 25.)  Plaintiff argues that this "is evidence to support that any such subrogation waiver was itself waived and has no effect." (*Id.*)  Plaintiff also asserts that the "no-coverage" exception to the anti-subrogation rule applies here and that it could not have waived any subrogation rights, either through its conduct or allowing the statute of limitations to lapse, because it did not learn of the settlements until 2021.  (*Id.* at 26.)  In Plaintiff's view, the Subrogation Waiver voids coverage because the settlements impaired its subrogation rights.  (ECF No. 182 at 23.)

"Ordinarily, an insurer has a subrogation right to recover the amounts it paid as benefits to its insured from a third-party whose conduct resulted in the injury to the insured."  *Fairfield Dev., Inc. v. J.D.I. Contractor & Supply, Inc.*, 703 F. Supp. 2d 1211, 1215 (D. Colo. 2010).  Under the anti-subrogation rule, however, an insurer cannot assert a subrogation claim if the third-party is also an insured covered under the policy for the risk in question.  *DeHerrera v. American Family Mut. Ins. Co.*, 219 P.3d 346, 351 (Colo. App. 2009).  The rule serves two purposes: it prevents an insurer from passing the risk of loss back to the insured in derogation of the purposes of the insurance policy in the first place, and it prevents conflicts of interest that might arise where the insurer would otherwise lack an incentive to provide a vigorous defense to the insured.  *Id.*

Here, the anti-subrogation rule forecloses recovery for Plaintiff under the Subrogation Provision.  Blackhawk, Axia, and "All Sub-Contractors" are all named insureds under the Policy.  (ECF No. 56 at 55.)  And the settlement agreements to which Plaintiff seeks subrogation involve only these named insureds.  Consequently, Plaintiff cannot prevail based on the Subrogation Provision under the anti-subrogation rule.  *Continental Divide Ins. Co. v. Western Skies Management, Inc.*, 107 P.3d 1145,

1148 (Colo. App. 2004) ("[A]n insurer generally has no right of subrogation against its own insured.").

Plaintiff's reliance on the "no-coverage exception" to the anti-subrogation rule does not convince the Court otherwise. The exception provides that, where there are two insureds on a policy, and one insured causes damage for which the insurer is liable to the other insured, the insurer may seek subrogation against the insured who caused the damage if the policy's coverage does not cover the insured's actions that caused the damage. *Continental Divide Ins. Co.*, 107 P.3d at 1148 ("If an insurer pays on behalf of one insured for damage caused by a second insured, *under a policy that does not cover the second insured for the loss*, the insurer may recover from the second insured by subrogation.") (emphasis added). Plaintiff argues that the exception applies here because the Policy "does not provide liability coverage to Axia," nor to "any of Axia's subcontractors." (ECF No. 187 at 26.)

But the Court agrees with Defendants that "Praetorian has not identified any portion of the Policy which extends coverage to Blackhawk for the losses resulting from the fire but does not extend the same coverage to the other insureds under the Policy." (ECF No. 186 at 25.) And in its reply, Plaintiff simply repeats, in conclusory fashion, that the Policy "did not provide liability coverage to Axia or any of Defendants' subcontractors." (ECF No. 197 at 13.) Plaintiff does not explain how or why its other insureds—Axia and the subcontractors—would not have been covered for the losses caused by the fire under the Policy. *Continental Divide Ins. Co.*, 107 P.3d at 1148. As a result, the Court concludes that Plaintiff has no subrogation rights for Defendants to impair against Axia and the subcontractors, and thus, Plaintiff cannot void coverage

18

pursuant to the Subrogation Provision.

Consequently, the Court grants summary judgment in Defendants' favor on the Subrogation Provision.

D.     **Defendants' Breach of Contract Argument**

Defendants contend that, even assuming coverage is void or offset under the Policy Provisions discussed above, those Provisions are not dispositive because Plaintiff breached the contract by not tendering payment, thereby materially breaching the contract.  (ECF No. 181 at 13 ("Praetorian cannot avoid its obligations under the Policy, nor its liability for breaching the same, on the basis of alleged Policy breaches by Defendants occurring after Praetorian materially breached the Policy.").)  Put differently, Defendants argue that, because Plaintiff materially breached the contract by not covering the claim back in August 2017, any subsequent alleged breach of the Policy by Defendants cannot be considered to void coverage.  *Kaiser v. Mkt. Square Disc. Liquors, Inc.*, 992 P.2d 636, 640 (Colo. App. 1999) (if a material breach occurs, it "excuses further performance by the other party").

Defendants essentially ask the Court to declare that it is entitled to summary judgment on its breach of contract counterclaim as a matter of law.  But the Court cannot do so because Plaintiff can still prevail under the MCF Provision (or the Protective Devices Endorsement Provision, on which Plaintiff still relies).  If coverage was void under the MCF Provision based on Defendants' alleged misrepresentation in the June 2017 estimate, Plaintiff did not breach the contract by refusing to cover the loss.  (*See* ECF No. 53 at 41 (candidly admitting that, if there is no coverage, Defendants' counterclaims, including for breach of contract, fail).)

19

Accordingly, Defendants' breach of contract argument is unavailing.

### E. Defendants' Statutory Bad Faith Claim

For similar reasons, the Court finds that it would be premature to grant summary judgment in Plaintiff's favor on Defendants' statutory bad faith claim. (ECF No. 182 at 28.) While Plaintiff persuasively argues that the lengthy procedural history of this case—including this Court's earlier summary judgment in its favor—suggests that its denial of the claim was not done in bad faith, the Court is not prepared at this juncture to declare that Plaintiff acted reasonably in denying the claim as a matter of law. (*Id.*)

## IV. CONCLUSION

For all these reasons, the Court ORDERS as follows:

1. Plaintiff's Motion for Summary Judgment (ECF No. 182) is DENIED;

2. Defendants' Motion for Summary Judgment (ECF No. 181) is GRANTED IN PART AND DENIED IN PART, as set forth above; and

3. This case remains set for a Final Trial Preparation Conference on July 29, 2025, and a 6-day jury trial to begin on August 11, 2025.

Dated this 6th day of November, 2024.

BY THE COURT:

_____
William J. Martínez
Senior United States District Judge