IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 17-cr-2034-WJM-KAS

PRAETORIAN INSURANCE COMPANY,

    Plaintiff-Counter Defendant,

v.

AXIA CONTRACTING, LLC, and
255 BLACKHAWK HOSPITALITY, LLP,

    Defendants-Counter Plaintiffs.

---

**ORDER DENYING PLAINTIFF'S MOTION FOR LEAVE TO
FILE ANOTHER MOTION FOR SUMMARY JUDGMENT**

---

Before the Court is Plaintiff Praetorian Insurance Company's ("Plaintiff") Motion for Leave to File a Second Motion for Summary Judgment ("Motion"). (ECF No. 251.) Defendants Axia Contracting, LLC's and 255 Blackhawk Hospitality, LLC's ("Defendants") oppose the motion. (ECF No. 253.)

For the following reasons, the Court denies the Motion.

### I.    PERTINENT BACKGROUND

The parties are familiar with the background of this case from, among other sources, the Court's Order resolving the parties' cross motions for summary judgment. (ECF No. 247.) The Court incorporates that background here and adds the following pertinent facts.

Plaintiff initiated this action in August 2017, seeking declaratory judgment that it was not required to cover Defendants' losses because Defendants failed to maintain a fence

around the jobsite as required by the "Protective Devices Endorsement" provision of the insurance policy ("Policy"). (ECF No. 1.) Defendants countersued for declaratory judgment regarding the parties' rights, obligations, and duties under the Policy, as well as for breach of contract and statutory and common law[1] bad faith. (ECF No. 23 at 19–22, ¶¶ 58–78.) In April 2018, Plaintiff moved for summary judgment on its Protective Devices Endorsement theory. (ECF No. 50.) In March 2019, the Court granted summary judgment in Plaintiff's favor but was subsequently reversed by the Tenth Circuit. (ECF No. 76 at 4–5.)

Several years later, after learning new information from Defendants' late discovery disclosures, Plaintiff amended its pleadings, relying on three new theories for why it is not required to cover Defendants' losses, totally or partially. (ECF No. 117.) Specifically, Plaintiff contends that it need not provide coverage for all or part of Defendants' losses under the Policy's (1) "Misrepresentation, Concealment, or Fraud Condition" provision; (2) "Recoveries" provision; and (3) "Subrogation" provision. (*Id.* at 7–8.) In September 2023, the parties filed cross summary judgment motions on Plaintiff's new theories, among other issues. (ECF Nos. 181, 182.) In November 2024, the Court granted Defendants' motion to the extent it sought judgment on Plaintiff's Subrogation provision theory but otherwise denied both cross motions. (ECF No. 247.) The case is now set to proceed to a jury trial in August 2025 on the remaining claims. (ECF No. 243.)

## II.     ANALYSIS

Notwithstanding this lengthy procedural history, Plaintiff seeks permission to file yet

---

[1] In April 2023, Defendants voluntarily dismissed the common law bad faith claim. (ECF No. 167.)

2

another[2] summary judgment motion, contending that a recent unpublished Tenth Circuit decision—*Curtis Park Group, LLC v. Allied World Specialty Ins. Co.*, 2024 WL 5194886 (10th Cir. Dec. 23, 2024)—"may be dispositive to this case in its entirety." (ECF No. 251 at 1.) Specifically, Plaintiff argues that the *Curtis Park Group* decision held "that under a Builder's Risk policy, [if] the named insured does not spend anything to repair the damaged property, it cannot recover." (*Id.* at 2.) Plaintiff also quotes the following sentence from the decision: "[Plaintiff] cannot recover costs it need not pay for." (*Id.*) In this light, Plaintiff argues that Defendants cannot recover in this case because "[i]t is undisputed that neither Defendant spent any money—nor will they ever—to repair or replace the damaged property." (*Id.*) "Indeed," Plaintiff continues, "the property was sold before repairs were made and the new owner paid a company affiliated with the Defendants to complete construction, *i.e.*, instead of Defendants paying for the repairs, they were in fact paid to do the repairs by the new owner." (*Id.*)

After reviewing the *Curtis Park Group* decision, the Court thinks—on first blush and without the benefit of full briefing—that Plaintiff's argument may have some merit. Even so, Plaintiff has never argued over the course of this nearly eight-year-old lawsuit that Defendant cannot recover because they have never paid to repair or replace the damaged property. Instead, as laid out above, Plaintiff's strategy has been to argue that various Policy exclusions void coverage. Plaintiff does not move to amend the pleadings or invoke any of the standards that would potentially allow it to do so after the Court's scheduling order deadline has passed. *See Gorsuch, Ltd., B.C. v. Wells Fargo Nat. Bank Ass'n*, 771

---

[2] Plaintiff styles the Motion as seeking leave to file a *second* summary judgment motion, but Defendants insist that Plaintiff seeks to file a *third* summary judgment motion. (ECF No. at 253 at 1.)

F.3d 1230, 1240 (10th Cir. 2014) (holding "that parties seeking to amend their complaints after a scheduling order deadline must establish good cause for doing so"). For this reason alone,[3] the Motion falters.

It is also worth mentioning, moreover, that Plaintiff has not explained *why* it has waited so long to raise this new legal theory. After all, *Curtis Park Group* did not break new ground, at least not in a legal sense. To be sure, the Tenth Circuit clearly articulated several helpful, generally applicable insurance law principles, such as, "If the owner is the named insured but the cost of repair has indisputably been borne by the contractor, the owner cannot recover. The insured has suffered no actual loss." *Curtis Park Group,* 2024 WL 5194886 at *7.

But *Curtis Park Group*'s analysis was also heavily tethered to the policy provisions at issue in that case—provisions that appear to be quite common. The policy in *Curtis Park Group* covered losses only if the named insured "*actually suffer[ed] a loss* as a result of the damage to" the structure it was building. *Id.* (emphasis in original). And the policy outlined important restrictions on what kinds of losses were covered—that is, costs the named insured "*actually spent* to repair the deflecting slab." *Id.* at 5 (emphasis in original). Relatedly, the "Valuation" section of the policy measured damage only based on "replacement cost." *Id.*

Similarly, the "Replacement Cost" section of Plaintiff's Policy provides that Plaintiff will pay only "the necessary and reasonable costs of materials and labor incurred to repair or replace . . . the part of the covered property that sustains direct physical loss or

---

[3] The Court also denies the Motion because, as Plaintiff acknowledges, the undersigned's practice standards entitle parties to file only one motion for summary judgment. *See* WJM Revised Practice Standard III.F.2.

4

damage." (ECF No. 253-6 at 2.)  The Policy further provides that, "[i]f the part of the covered property that sustains direct physical loss or damage is repaired or replaced, the payment will not exceed the amount [Defendants] spend to repair or replace the damaged or destroyed property." (*Id.*)

For some reason, however, Plaintiff has waited to raise this issue for the better part of a decade, even though the Policy has ostensibly[4] restricted coverage in these similar respects since Plaintiff drafted it back in November 2016.  (ECF No. 50-2.)  By stark contrast, the insurer in *Curtis Park Group* repeatedly and timely brought to the trial court's attention its theory that the named insured could not recover because it had not paid and would never "pay the hard costs of the repair." *Id.* at 3.  If the Court had to guess, it seems that the *Curtis Park Group* decision may have alerted Plaintiff to the potential viability of this legal theory.  But Plaintiff's attempt to assert this theory after this belated realization via a motion for leave to file another summary judgment motion runs headlong into the requirements of Fed. R. Civ. P. 16(b)(4) and Fed. R. Civ. P. 15(a)—requirements Plaintiff does not even begin to attempt to satisfy.  *See SRM, Inc. v. Great Am. Ins. Co.*, 2014 WL 11350315, at *6 (W.D. Okla. July 3, 2014), *aff'd*, 798 F.3d 1322 (10th Cir. 2015) ("The court would have been on solid ground summarily dismissing SRM's 'new' facts and 'new' law with no evaluation on the merits because the new facts and new law are not new at

---

[4] Defendants maintain that "[t]he Policy isn't so limited."  (ECF No. 253 at 9.)  They point out that the "Loss Payment Options" section of the Policy provides Plaintiff with the option to "pay the value of the lost or damaged property."  (*Id.* at 9–10.)  In Defendants' view, this language belies the notion that coverage is limited to circumstances where an insured repairs or replaces the covered property.  (*Id.* at 10 ("If the only way for Defendants to recover under the Policy was to get reimbursement for repairs already performed, there would be no difference between the value of the covered property (*i.e.*, the amount determined under the Valuation section), and the separately listed cost of repairing or replacing the lost or damaged property.").)

5

all—they could have been included in SRM's initial brief."); *see also Bridgestone/Firestone, Inc. v. Loc. Union No. 998, United Rubber, Cork, Linoleum & Plastic Workers of Am.*, 1990 WL 269444, at *1 (W.D. Okla. Sept. 4, 1990) ("Courts are already drowning in paper, and briefing of issues must at some point come to an end.").[5]  Simply put, Plaintiff cannot now move for summary judgment on a legal theory it has had almost a decade to plead but which, for whatever reason, it has elected never to assert in this action.

## I.     CONCLUSION

For all these reasons, the Motion is DENIED.  (ECF No. 251.)

Dated this 16th day of January, 2025.

BY THE COURT:

_____
William J. Martinez
Senior United States District Judge

---

[5] While the two cases cited here were in the motion for reconsideration context, the spirit behind their reasoning nonetheless applies here: parties are not entitled to cite "new law" in an attempt to posit new legal theories they could have raised before deadlines have passed.